UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KATHRYN D.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

19-CV-1550-LJV
DECISION & ORDER

---

On November 18, 2019, the plaintiff, Kathryn D. ("Kathryn"), brought this action under the Social Security Act ("the Act").  She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.  Docket Item 1.  On May 13, 2020, Kathryn moved for judgment on the pleadings, Docket Item 9; on August 7, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 11; and on August 28, 2020, Kathryn replied, Docket Item 12.

For the reasons that follow, this Court grants Kathryn's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Kathryn argues that the Commissioner erred in three ways. *See* Docket Item 9-1. First, she argues that the "Appeals Council improperly rejected the disability-supporting opinion of [her] treating physician Dr. Su Zhan." *Id.* at 1. Second, she argues that the "ALJ failed to properly develop the record after rejecting the only

2

medical opinion of record that assessed [her] functional limitations." *Id.* Finally, she argues that her residual functional capacity ("RFC") was "impermissibly . . . based on [the ALJ's] own lay interpretation of the bare medical evidence." *Id.*

This Court agrees that the ALJ erred and, because that error was to Kathryn's prejudice, remands the matter to the Commissioner.

**I.      TREATING PHYSICIAN RULE AND DUTY TO DEVELOP THE RECORD**

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). A "medical opinion" is a statement from an acceptable medical source that "reflect[s] judgments about the nature and severity of [the claimant's] impairment(s), including [] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

An ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's medical opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

Some opinions of medical providers, however, are not "medical opinions" as that term of art is used in the Social Security context. If an opinion effectively decides the ultimate issue—that is, that the claimant is disabled—it opines on a matter reserved to the Commissioner and to that extent is not considered a medical opinion. 20 C.F.R. § 404.1527(d). So, an "opinion" by a medical source that a claimant is "'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled." 20 C.F.R.§ 404.1527(d)(1). Nonetheless, in such a circumstance, the ALJ still must analyze what is behind the opinion or recontact the provider to request a translation of the opinion into language that fits the Social Security context. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the fact that the "ultimate finding of whether a claimant is disabled" is "reserved to the [C]ommissioner . . . means that the Social Security Administration *considers the data that physicians provide* but draws its own conclusions") (emphasis added).

4

Moreover, "[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, before rendering any eligibility determination, "make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47). Thus, when a claimant is receiving or has received ongoing treatment from a qualified medical professional, the ALJ is required to "request a medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting former 20 C.F.R. § 416.913(b)(6)[3]) (additional citation omitted).

Here, the ALJ assigned "[l]imited weight" to the opinions of Kathryn's treating physicians—specifically, those of Romanth Waghmarae, M.D.; Cameron Huckell, M.D.; and Marc Tetro, M.D.—as well as the opinion of a treating physician's assistant, Neil

---

[3] This section was amended effective March 27, 2017. Revisions to the Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844, 5875 (Jan. 18, 2017). Because Kathryn applied for disability benefits on April 4, 2016—that is, before the date the changes became effective—her claim is governed by the prior regulation. *See id.* at 5844-46.

5

Siejca, PA-C—without explicitly addressing the *Burgess* factors.  *See* Docket Item 4 at 28-29.  The ALJ noted that the medical providers were "acceptable medical sources with a longitudinal treatment history with the claimant," *id.* at 28, but that did not explicitly address "the frequency, length, nature, and extent of treatment" or "whether the physician is a specialist," *see Greek*, 802 F.3d at 375; *see also Burgess*, 537 F.3d at 129.  Likewise, the ALJ noted that "the conclusions reached in the opinions are not entirely supported by the correlating clinical findings showing negative straight leg raises and good muscle strength, normal gait, station, balance and coordination [sic]."  Docket Item 4 at 29.  But she did not explain how the opinions conflicted with those findings, whose findings she cited, when those findings were made, or anything else that might provide a glimpse of her reasoning.  *See id.*  In fact, the ALJ said nothing about this other than her conclusory assertion.  Therefore, she did not explicitly address "the amount of medical evidence supporting the opinion[s]" or "the consistency of the opinion[s] with the remaining medical evidence."  *See Greek*, 802 F.3d at 375; *Estrella*, 925 F.3d at 95-96; *see also Burgess*, 537 F.3d at 129.

Even worse, the ALJ never assigned any weight to the opinion of another treating physician, Su Zhan, M.D., Ph.D., let alone addressed the *Burgess* factors as to Dr. Zhan.

Because the treating providers' opinions addressed limitations not included in the RFC, that error alone requires remand.  *See Estrella v. Berryhill*, 925 F.3d at 95.  For example, Dr. Tetro consistently noted Kathryn's limited range of motion in her left shoulder, caused by "rotator cuff tendinitis and AC joint arthrosis."  *See* Docket Item 4 at 400 ("positive Neer's Test [sic] and mildly positive Hawkins test for rotator cuff

6

impingement"); *see also id.* at 412 ("L[eft] shoulder AROM [active range of motion] decreased throughout"); *id.* at 420 ("radiating pain present into left shoulder/arm"). Dr. Zhan and Dr. Tetro also observed Kathryn's limited range of motion in her lumbar and cervical spines. *See, e.g.*, *id.* at 677, 735 (Dr. Zhan: limitations ranging from 25% to 50%); *id.* at 438 (Dr. Tetro: "The cervical spine demonstrated limitation of motion."). Dr. Zhan also noted that "[d]ue to [Kathryn's] pain, [she] is only able to sit up to 60 minutes, walk up to 30 minutes, and stand[] up to 30 minutes." *Id.* at 735. But the ALJ did not address these limitations or include them in the RFC.

And that error certainly was not harmless. Despite Dr. Zhan's opinion limiting the amount of time Kathryn can sit, the RFC requires that Kathryn be able to sit for a full workday.[4] *See id.* at 24. Despite the limited range of motion in Kathryn's back found by Dr. Zhan and Dr. Tetro, the RFC contemplates Kathryn's being able to occasionally stoop, crouch, and crawl. *See id.* Despite Dr. Tetro's repeated findings of limited range of motion in Kathryn's left shoulder, the RFC would require her to be able to "occasionally reach overhead" and "frequently reach in other directions" with her left arm. *See id.* The ALJ offered no reason behind those conclusions, nor did she attempt

---

[4] "[A] sedentary job is defined as one which involves sitting." *See* 20 CFR §§ 404.1567(a), 416.967(a). "[A] certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.* Although Dr. Zhan noted that Kathryn could sit only for 60 minutes, and stand or walk only for 30 minutes, she did not specify whether that was at a time or in an eight-hour workday, and if the former, how long Kathryn had to wait before again sitting, standing, or walking. Docket Item 4 at 735. Moreover, Dr. Zhan may not have offered this not explicitly as an opinion but in a section of her report entitled "History of Present Illness." *Id.* Nevertheless, the ALJ was obligated to contact Dr. Zhan for an explanation; and because that explanation may well have affected the RFC, the failure to do so requires remand.

to reconcile them with the RFC or to explain the discrepancy between the RFC and the treating providers' opinions.

Not only did the ALJ err by not explicitly addressing the *Burgess* factors before assigning the treating physicians' opinions limited weight, but she also erred by relying on inappropriate reasons for doing so. The first reason that the ALJ gave for discounting these opinions was that they each opined that Kathryn was "disabled" to some extent, and "whether an individual is disabled or can work is an issue reserved to the Commissioner." *Id.* at 28. As noted above, that was error. Of course, opinions on the ultimate issue reserved to the Commissioner did not bind the ALJ. *See* 20 C.F.R. § 404.1527(d)(1). But an ALJ is not at liberty to reject such opinions simply because they reach the ultimate issue without analyzing what is behind those opinions or recontacting the physicians to have them translate their opinions into more appropriate terms. *See Snell*, 177 F.3d at 133 (the fact that the "ultimate finding of whether a claimant is disabled" is "reserved to the [C]ommissioner . . . means that the Social Security Administration *considers the data that physicians provide* but draws its own conclusions") (emphasis added); *Jakubowski v. Berryhill*, 2017 WL 1082410, at *15 (E.D.N.Y. Mar. 22, 2017) (remanding because the ALJ did not "adequately support[] his decision to accord [] little weight" to treating source opinion that the claimant maintained a "total 100% disability from her occupation," among other specific limitations).

Moreover, the opinions that the ALJ discounted were not simply conclusory statements that Kathryn was disabled. On the contrary, each opinion included descriptions of Kathryn's impairments, symptoms, and treatment history, so that they might well have been—and should have been—useful in formulating the RFC. *See*

8

*supra*; *see, e.g.*, Docket Item 4 at 323 (Dr. Huckell: "[Kathryn] has bulging, torn[,] and stretched [] discs in the low lumbar spine and she [has] two disc bulges in the cervical spine." Her "disc injuries . . . [are not] amenable to surgical correction" and have left her "with chronic pain and discomfort."); *id.* at 338-40 (Dr. Tetro: detailing assessment and plan and finding that Kathryn is "improving steadily following surgery" and "will gradually increase activity as tolerated" but still "is unable to work and . . . disabled"); *id.* at 518-27 (Dr. Waghmarae: "Pain is increased by lifting, stretching[,] and relieved by medication, TENS unit, and laying in recliner. . . . Pain is associated with stiffness in her lower back . . . Compared to the time of initial injury, the pain now is worse"; noting "[c]ervical spine . . . tenderness" and several abnormalities of lumbar spine, including "tenderness, . . . muscle spasms, [and abnormal] spine motion"; finding disability score of 58% with 40-60% equaling "[s]evere disability" and over 60% equaling "[c]rippled"). The ALJ did not address the contents of these opinions at all, however, instead simply discounting them because they included an opinion on the ultimate issue reserved to the Commissioner. *See id.* at 28-29.

Similarly, the ALJ discounted the treating source opinions because "opinions offered in workers compensation cases utilize different standards than that required by the Social Security Regulations." *Id.* Again, that is an insufficient reason to simply discount them. Although a "disability score [of] 58%"[5] and findings of "temporarily

---

[5] A disability score between 40% and 60% is a "[s]evere disability." Docket Item 4 at 525. For patients with a disability score in this range, "[p]ain remains the main problem . . . but travel, personal care, social life, sexual activity, and sleep are also affected. These patients require detailed investigation." *Id.* Those sorts of opinions might not precisely fit the social security context, but they certainly suggest limitations that must be factored into the equation. And if that necessitates contacting the

9

disabled" or "permanent partial disability" for workers compensation purposes, *see id.* at 330, 525, 558, may not align with Social Security regulations, such assessments certainly shed some light on what the ALJ must decide—especially when those assessments were made by the claimant's treating physicians.  Before she simply discounted these opinions, it was incumbent on the ALJ at least to recontact the physicians to develop the record—perhaps by asking them to adapt the language of their opinions to the Social Security context.  *Cf. Robinson v. Berryhill*, 2018 WL 4442267, at *5 (W.D.N.Y. Sept. 17, 2018) (finding that the ALJ erred by rejecting opinions because they were rendered for workers' compensation purposes without first recontacting the physicians); *Ligon v. Astrue*, 2012 WL 6005771, at *20 (E.D.N.Y. Dec. 3, 2012) ("A doctor's opinion is not intrinsically suspect because the patient is seeking other benefits.").

Indeed, even if the treating source statements had been nothing more than legal conclusions, or even if they had employed nothing other than workers compensation jargon, the ALJ nonetheless would have erred in discounting them without first asking for further interpretation or information from the treating sources.  *See Snell*, 177 F.3d at 134 ("Reserving the ultimate issue of disability to the Commissioner    . . . does not exempt administrative decision makers from their obligation . . . to explain why a treating physician's opinions are not being credited.").  As this Court has noted, an ALJ must have a good reason for rejecting "even laconic" treating-source opinions.

---

providers who rendered those opinions for workers compensation purposes, then that is exactly what the ALJ must do.

*Schramm v. Colvin*, 2014 WL 4627222, at *3 (W.D.N.Y. Sep. 15, 2014). And the ALJ provided no good reasons here.

The ALJ did not explicitly address the *Burgess* factors and gave inappropriate reasons for assigning little weight to several treating source opinions. Those errors require remand.

## II. LAY OPINON OF THE ALJ

An ALJ may not reject or discount the opinion of a medical professional unless other competent medical evidence in the record supports that decision. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Along the same lines, an "ALJ cannot substitute [her] own lay opinion in place of established acceptable medical authorities or treating sources." *Morseman v. Astrue*, 571 F. Supp. 2d 390, 397 (W.D.N.Y. 2008) (citing *Balsamo,* 142 F.3d at 81).

"While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion to or testified before him." *Balsamo*, 142 F.3d at 81. That is because "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Wilson v. Colvin*, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citing *Dailey v. Astrue*, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010), *report and recommendation adopted*, 2010 WL 4703591 (W.D.N.Y. Nov. 19, 2010). "[W]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," as a general rule, the Commissioner "may not make the connection himself." *Perkins v. Berryhill*, 2018 WL 3372964, at * 3 (W.D.N.Y. July 11,

2018) (citing *Jermyn v. Colvin*, 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) ("[N]one of these medical sources assessed [the p]laintiff's functional capacity or limitations, and therefore provide no support for the ALJ's RFC determination.")). Only in limited circumstances, such as "when the medical evidence shows only minor physical impairments, [may] 'an ALJ permissibly . . .render a common[]sense judgment about functional capacity even without a physician's assessment.'" *Perkins*, 2018 WL 3372964, at *3 (citing *Wilson*, 2015 WL 1003933, at *21).

In addition to assigning limited weight to the treating physician opinions, the ALJ also gave "limited weight" to the only other opinion of record, that of the consultative examiner, David Brauer, M.D. *See* Docket Item 4 at 28. The ALJ certainly was permitted to discount Dr. Brauer's opinion, and it appears that she had sound reasons for doing so. *See id.* (reasoning that Dr. Brauer "d[id] not have a longitudinal treatment history with [Kathryn] and based his opinion upon one occasion"; Dr. Brauer's opinion was "not consistent with his clinical findings"; Dr. Brauer examined Kathryn before she "underwent a permanent spinal cord stimulator" and therefore did not take the procedure into account; and Dr. Brauer "did not adequately consider the combined effects of [Kathryn's] impairments"). The result of limiting Dr. Brauer's opinion, however, was that there were no opinions in the record given anything more than limited weight.

Nevertheless, ALJ determined Kathryn could "perform sedentary work as defined in 20 CFR [§] 404.1567(a) except" that she can

> lift and carry up to 10 pounds. [She] can occasionally stoop, kneel, crouch and crawl, kneel [sic], climb stairs and push [or] pull bilaterally. [She] can never climb ramps, ropes[,] and ladders. [She] can occasionally reach overhead with her left dominant upper extremity. [She] can frequently reach in other directions with her left dominant upper extremity. [She] can frequently finger, handle[,] and feel with her left dominant hand. Due to

12

> symptoms of pain and medication side effects, [she] can perform simple routine work and make simple workplace decisions, not at production rate pace (assembly line pace).

Docket Item 4 at 24. Those limitations are quite specific, but no physician or other medical provider opined about any of them. "Although there are many treatment notes in the record, they generally contain bare medical findings and do not address or illuminate how [Kathryn's] impairments affect her physical ability to perform work-related functions." *See Wilson*, 2015 WL 1003933, at *21. Therefore, and because all medical opinions were given "limited weight," the ALJ necessarily relied on her own lay judgment to evaluate the medical records and formulate the RFC. It is otherwise "unclear to the Court how the ALJ, who is not a medical professional, came up with this highly specific RFC determination." *See Perkins*, 2018 WL 3372964, at *3 (citation omitted).

What is more, the RFC conflicts with the jobs upon which the ALJ relied to conclude that Kathryn was not disabled. The jobs of table worker and surveillance-systems monitor, for example, require *frequent* pushing and pulling. *See* 739.687-182 Table Worker, 1991 WL 680217 (Jan. 1, 2016); 379.367-010 Surveillance-Systems Monitor, 1991 WL 673244 (Jan. 1, 2016). But the RFC limits Kathryn to only *occasional* bilateral pushing and pulling. *See* Docket Item 4 at 24. And the job of survey worker is not sedentary work at all, *see* 205.367-054 Survey Worker, 1991 WL 671725 (Jan. 1,

2016); it is light work,[6] which can involve "walking or standing to a significant degree" and "[e]xerting up to 20 pounds of force occasionally,"[7] see id.

The ALJ apparently recognized a discrepancy between the testimony of the vocational expert ("VE") and "the information contained in the Dictionary of Occupational Titles" ("DOT"). Docket Item 4 at 31. The ALJ nevertheless found that "there [was] a reasonable explanation for the discrepancy" because the VE "testified that the reaching and manipulative limitations are not accommodated in the DOT, and that the number of jobs which would accommodate these limitations were reduced based on his own professional experience." Id. But the VE's testimony did not address any "reaching and manipulative limitations . . . not accommodated in the DOT."[8] See id. at 107-11. On the

---

[6] The "[p]hysical demand requirements [of light work] are in excess of those for sedentary work . . . . [A] job should be rated [l]ight [w]ork: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." See 205.367-054 Survey Worker, 1991 WL 671725.

[7] The RFC limits Kathryn to lifting "up to 10 pounds." Docket Item 4 at 24.

[8] The following exchange took place during the hearing:

[ALJ]: . . . And has your testimony been consistent with the DOT?
[VE]: Yes.
[ALJ]: And what are you basing your time-off [sic] task, absenteeism, and the reaching?
[VE]: Basically working in vocational rehabilitation for the past 38 years.
[ALJ]: Okay. And that goes to the overhead reaching and the other reaching as well?
[VE]: Correct.

Docket Item 4 at 110. Other than this aside and the ALJ's recitation of the RFC, the hearing transcript lacks any discussion between the VE and the ALJ about reaching or manipulative limitations. See id. at 107-111. Therefore, it is not clear to the Court what the ALJ is referring to when she discusses the VE's reconciliation of his testimony with the DOT; how the ALJ could reconcile the VE's testimony with the DOT; or how the ALJ

contrary, he testified unequivocally that his testimony was "consistent with the DOT." *Id.* at 110.

The VE opined that Kathryn could perform the jobs of table worker and surveillance-systems monitor but did not discuss any limitations—from the DOT or anywhere else—for those positions. *See id.* at 109. The only position for which the VE even hinted at a possible conflict with the DOT was the job of survey worker. The VE explained that the DOT characterizes survey worker as "light work" because "back in 1981" that job title included "door-to-door survey workers and census workers." *Id.* at 109-10. He believed, however, that Kathryn could perform the tasks necessary for a "telephone survey worker," a "strictly sedentary" position. *Id.* at 110. That is the only inconsistency that the VE's testimony possibly could have reconciled. And that reconciliation still does not account for the fact that survey workers also must lift up to 20 pounds, while the RFC limits Kathryn to lifting 10 pounds. *Compare* 205.367-054 Survey Worker, 1991 WL 671725, *with* Docket Item 4 at 24.

Moreover, the VE's testimony did not address whether someone like Kathryn—who can only *occasionally* push or pull bilaterally—could still perform the jobs of table worker or surveillance-systems monitor, which require *frequent* pushing and pulling. *See* Docket Item 4 at 109-110; *compare id.* at 24, *with* 739.687-182 Table Worker, 1991 WL 680217 *and* 379.367-010 Surveillance-Systems Monitor, 1991 WL 673244. Under Social Security regulations, the ALJ was required to reconcile these conflicts before relying on the VE's testimony, but she did not. *See* SSR 00-4P, 2000 WL 1898704, at

---

could conclude that "the reaching and manipulative limitations are not accommodated in the DOT [but] the number of jobs which would accommodate these limitations were reduced based on [the VE's] own professional experience." *See id.* at 31.

15

*2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE [] evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE [] evidence to support a determination or decision about whether the claimant is disabled . . . . The [ALJ] must resolve the conflict by determining if the explanation given by the VE [] is reasonable and provides a basis for relying on the [VE's] testimony rather than on the DOT information.").

The Commissioner argues that the RFC nonetheless is supported by substantial evidence because Kathryn testified that "she could continuously be on her feet for one to two hours, walk about one mile, and sit continuously for one to two hours before needing to stretch and move about." Docket Item 11-1 at 27. But Kathryn also testified that after sitting for an hour or two, it "takes [her] about an hour/almost two hours" before the pain subsides and that she did not think that she could get through an eight-hour workday even alternating among sitting, standing, and walking. Docket Item 4 at 102-04. So the Commissioner's argument misses the mark.

Ultimately, is not clear to the Court how the ALJ was able to glean from the bare medical data that the RFC would allow Kathryn to perform sedentary work—or the jobs that she identified—despite her impairments. Because the ALJ improperly substituted her own lay opinion in formulating Kathryn's RFC, her decision is not supported by substantial evidence. *See Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that [the] plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data."); *Perkins*, 2018

WL 3372964, at *4 ("Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review."). That is an additional, independent error requiring remand.

## CONCLUSION

The matter is remanded so that the ALJ can consider the treating source opinions and assign them appropriate weight in light of *Burgess* and the factors identified in 20 C.F.R. § 404.1527. The ALJ also should ensure that any specific RFC limitations are based on medical evidence in the record, not the ALJ's "own surmise." *See Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order). And the ALJ also should ensure that any jobs she finds Kathryn able to perform are consistent with the RFC and supported by the DOT or the testimony of a VE.

The Court will not reach any remaining issues raised by Kathryn—including the objection involving the alleged failure of the Appeals Council to consider new evidence—"because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

The Commissioner's motion for judgment on the pleadings, Docket Item 11, is DENIED, and Kathryn's motion for judgment on the pleadings, Docket Item 9, is GRANTED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: January 20, 2021
Buffalo, New York

                                            */s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE